UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RICHARD L. HOLDER, and )
JOHN R. GROUNDS, Individually and )
as Class Representatives of all those )
similarly situated, )
)
                     Plaintiffs, ) 1:04-cv-1739-SEB-VSS
) Cause No.
v. )
) COMPLAINT – CLASS ACTION
FLAGSTAR BANK, FSB )
)
                     Defendant. )

## CLASS ACTION COMPLAINT FOR DAMAGES

### I. Nature of the Case

1. Plaintiffs, Richard L. Holder, (hereinafter "Holder") and John Grounds (hereinafter "Grounds" or collectively "Plaintiffs"), by counsel, bring this action against Defendant, Flagstar Bank, FSB (hereinafter "Flagstar") for its violations of The Fair Labor Standards Act, 29 U.S.C. §201, *et seq*.

### II. Parties

2. Holder is a resident of the State of Indiana who at all times relevant to this action resided within the geographical boundaries of the Southern District of Indiana.

3. Grounds is a resident of the State of Illinois.

4. Flagstar is a corporation which maintains offices and conducts business within the geographical boundaries of the Southern District of Indiana. Flagstar is a federally chartered savings bank duly authorized under the laws of the United States.

5. Flagstar has operations and/or offices in approximately 23 states.

6. Defendant's registered agent for service of process is Albert J. Gladner, General Counsel, located at 5151 Corporate Drive, Troy, MI, 48098.

### III. Jurisdiction and Venue

7. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; and 29 U.S.C. §201 *et seq.*

8. Flagstar is an "employer" as that term is defined by 29 U.S.C. §203(d).

9. Holder, at all times relevant, was an eligible "employee" as that term is defined by 29 U.S.C. §203(e)(1).

10. Grounds, at all times relevant, was an eligible "employee" as that term is defined by 29 U.S.C. §203(e)(1).

11. The employment relationships between Flagstar on the one hand, and Holder and Grounds on the other, were subject to Federal law.

12. At all relevant times, Flagstar was an enterprise engaged in commerce or in the production of goods for commerce as those terms are defined by 29 U.S.C. §203(b), (i), (j) (k) and (s)(1).

13. At all relevant times, Holder and Grounds earned "wages" from Flagstar as that term is defined under 29 U.S.C. §203(m), without limitation.

### IV. Factual Allegations

14. Holder commenced employment with Flagstar in or about November 2002 as a Manager and remained continuously employed through approximately September 16, 2003.

15. Grounds commenced employment with Flagstar in or about March, 2003, as a manager and remained continuously employed through approximately November, 2003.

16. At all relevant times, Holder and Grounds were employees of Flagstar.

17. At the time of hire, Holder and Flagstar entered into the "Flagstar Bank, FSB My Net Branch Compensation Agreement," which was stated to govern the terms and conditions of Holder's employment ("Holder Agreement"). A true and accurate copy of said Agreement is attached hereto as Exhibit A.

18. At the time of hire, Grounds and Flagstar entered into the "Flagstar Bank, FSB My Net Branch Compensation Agreement," which was stated to govern the terms and conditions of Grounds' employment ("Grounds Agreement"). Grounds' Agreement is identical to Exhibit "A" in all material respects.

19. Flagstar drafted said Agreements in there entirety and represented that signature to the Agreements were a condition precedent to employment. The Grounds and Holder Agreements are essentially identical.

20. In connection with his employment, Holder was assigned to open and operate a Flagstar Loan Center for the purpose of originating and servicing residential mortgage loans. Said Loan Center was located at 3500 DePauw Boulevard, Suite 3002, Indianapolis, IN, 46268.

21. In connection with his employment, Grounds was assigned to open and operate a Flagstar Loan Center for the purpose of originating and servicing residential mortgage loans. Said Loan Center was located at 2580 Foxfield Road, St. Charles, IL 60174 and then 2901 West Main Street, St. Charles, IL 60175.

22. Despite the title of "Manager," Flagstar agreed to employ Holder and/or Grounds on a "commission basis" according to a "Loan Officer Commission Agreement," attached as an Addendum to the Agreements. In addition, Holder and

Grounds were to provide management services on the "net compensation basis" as defined under the Agreements.

23. As a condition of employment, Holder and Grounds were required to submit "Business Plans."

24. As a condition of his employment, Holder was required to pay Flagstar, the employer, $12,000.00 to fund the "Initial Operating Account Deposit." Said funds were used to cover the initial administrative costs of the branch, including furniture, computers and overhead expenses.

25. As a condition of his employment, Grounds was required to pay Flagstar, the employer, approximately $19,800 to fund the "Initial Operating Account Deposit." Said funds were used to cover the initial administrative costs of the branch, including furniture, computers and overhead expenses.

26. As a condition of their employment, Holder and Grounds were required to maintain the "Loan Center Operating Account." Said account was used to fund the operations of the Loan Center. Holder and Grounds were required to use their personal funds and earned wages to carry a requisite "Minimum Balance" in such accounts as defined and mandated by Flagstar.

27. From their wages, Holder and Grounds were responsible to reimburse Flagstar for any amount which Flagstar expended towards furniture and/or equipment for the Loan Center.

28. Essentially, Holder and Grounds were responsible for establishing, opening and maintaining Loan Centers for Flagstar, while carrying the classification of "employee." As a condition to employment, Holder and Grounds had to agree to operate

4

the Loan Center under the name of "Flagstar" and "no other name or names." At no time did Holder or Grounds secure a property right in the Flagstar name.

29. Holder and Grounds were financially responsible for all Loan Center Expenses.

30. Holder and Grounds were financially responsible for their own travel, meals and entertainment.

31. Despite the title of "Manager," Flagstar repeatedly failed to pay Holder and Grounds a regular salary. In fact, on multiple occasions Holder and Grounds failed to receive any compensation at all for their employment during certain work weeks.

32. Holder and/or Grounds were not exempt employees as that term is defined under the FLSA.

33. Flagstar repeatedly failed to pay Holder and/or Grounds for all hours worked.

34. At all times during his employment, Holder and/or Grounds regularly worked in excess of sixty (60) hours per week.

35. Flagstar repeatedly failed to compensate Holder and/or Grounds for overtime hours worked.

36. At all relevant times, title to all "equipment, furniture and other property" remained with Flagstar until paid in full by Holder and/or Grounds.

37. At all times, Flagstar controlled the hiring and firing of employees at the Loan Centers.

38. At all times, Flagstar retained the right to "make all final decisions regarding operational and employment matters in the Loan Center."

39. At all times, Flagstar reserved the right (and is believed) to have co-mingled the funds in the Loan Center Operating Account with the other funds and assets of Flagstar.

40. In the event of a Quarterly Net Loss, Flagstar paid no monies at all for Holders' or Grounds' employee services.

41. Holder and/or Grounds were required to personally fund any deficiencies in the Loan Center Operating Account caused by any Quarterly Net Loss. Additionally, Flagstar would withhold Holder's and/or Grounds' earned wages to offset such losses and/or to fund said Account.

42. Upon termination of the Agreement, Flagstar reserved the right to hold Holder and/or Grounds liable for any negative balance in the Loan Center Operating Account. Alternatively, Flagstar retained the right to hold any positive balance funds for a minimum of ninety (90) days following termination.

43. For each mortgage and/or portfolio loan closed, Flagstar charged the Loan Center's Operating Account various "Recapture Fees" according to set schedules.

44. Following his separation from employment, Flagstar has attempted to hold Holder and Grounds, former employees, liable for the alleged net operating losses of the Loan Center.

45. Flagstar's Agreement is against the public policy of the United States.

46. Flagstar's Agreement is in violation of the governing regulations set forth by the Department of Housing and Urban Development ("HUD"). Under HUD's governing Handbook, the mortgagee (Flagstar),

> …must pay all of its own operating expenses. This includes the compensation of all employees of its main and branch offices. Compensation may be on the basis of a

6

> salary, salary plus commission, and commission only. Employees that perform underwriting and loan servicing activities may not receive commissions. The operating expenses that must be paid by the mortgagee include, but are not limited to, equipment, furniture, office rent, overhead, and other similar expenses incurred in operating a mortgage lending business.

47. According to a May 1, 2000 *Opinion Letter* from the U.S. Department of Housing and Urban Development, the Agreement utilized by Flagstar is a "prohibited branch arrangement." A true and accurate copy of said *Opinion Letter* is attached hereto as Exhibit C.

48. Flagstar's Agreement attempts to thwart applicable employment, franchising, RESPA, FHA and HUD regulations.

49. Holder and Grounds have suffered unpaid minimum and overtime wages in an amount to be determined.

50. Holder and Grounds have suffered unpaid commission in an amount to be determined.

51. Flagstar has repeatedly refused to honor Holder's and Grounds' demand for payment.

## V. Cause of Action
### Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*

52. Holder and Grounds hereby incorporate paragraphs 1-51 by reference.

53. The Loan Center Manager positions, which Holder and Grounds held at all relevant times, failed to meet the statutory requirements for an "exempt" position as defined under the FLSA.

54. As non-exempt employees, Holder and Grounds were entitled to payment of at least minimum wage for all hours worked up to forty (40) hours per week, and time and one-half for all hours worked in excess of forty (40) hours in a given work week.

55. Flagstar failed to remit timely payments to Holder and Grounds for all hours during their employment.

56. Flagstar failed to remit requisite overtime compensation to Holder and Grounds as required.

57. Flagstar failed to maintain appropriate records of hours worked by Holder and Grounds.

58. The benefits as provided under the FLSA override any contractual provisions and cannot otherwise be waived.

59. Holder and Grounds have been damages by Flagstar's unlawful conduct.

60. Flagstar's conduct was intentional, willful and in reckless disregard of Holder's and Grounds' rights as protected by the FLSA.

61. Flagstar has no good faith defense to Holder's and Grounds' wage claims.

62. Flagstar's actions were not objectively reasonable.

63. As a result of Flagstar's violations of the FLSA, Holder and Grounds are entitled to:

      i. an award of all minimum wages earned;

      ii. an award of all overtime wages earned;

      iii. liquidates damages in amounts equal to (i) and/or (ii); and

      iv. an award of costs and reasonable attorney fees.

## VI. Class Action Allegations

64. Holder and Grounds bring this action on their own behalf and in accordance with Rule 23 of the Federal Rules of Civil Procedure, as class representatives on behalf of all similarly situated individuals who entered into Flagstar Bank, FSB My Net Branch Compensation Agreements.

65. The class is specifically comprised of all persons who entered into and operated under Flagstar Bank, FSB My Net Branch Compensation Agreements in the United States from October 22, 2002, through the present and continuing until such time as this matter is finally adjudicated (excluding those persons who may opt out of the class).

66. The class that the Plaintiffs seek to represent is so numerous that joinder of all members is impracticable in that there are in excess of eighty (80) individuals throughout the United States that entered into such Agreements.

67. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The common question of fact and law include questions concerning the interpretation of the Compensation Agreement, the policies and practices of Flagstar under the Compensation Agreements, and the treatment of such contractual relationships under federal law, specifically the FLSA.

68. The claims of Holder and Grounds are typical of the class. Each of them entered into Agreements with Flagstar that were essentially identical to those of the class. Further, the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the

party opposing the class, or adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

69. Holder and Grounds will fairly and adequately represent the interests of all class members. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of the claims set forth herein.

## VII. Requested Relief

WHEREFORE, Plaintiffs, Richard L. Holder and John R. Grounds, by counsel, respectfully request that this Court enter judgment in their favor and award him the following specific relief:

- A. That this Court enter an Order certifying that this is a proper class action and that it may be so maintained;
- B. That this Court award the class all minimum wages earned;
- C. That this Court award the class all overtime wages earned;
- D. That this Court award the class liquidated damages in amounts equal to "B" and/or "C" above;
- E. The Court award the class its costs and reasonable attorneys fees;
- F. That this Court award such other relief as is reasonable and just.

Date:    October 22, 2004

                              Respectfully submitted,

                              **STEWART & IRWIN, P.C.**

                              _____
                              Peter S. Kovacs
                              Attorney No. 16771-49

                              _____
                              Lisa Cross Price
                              Attorney No. 21589-49

                              Attorneys for Plaintiffs

Peter S. Kovacs
Lisa Cross Price
**STEWART & IRWIN, P.C.**
251 East Ohio Street, Suite 1100
Indianapolis, Indiana  46204
Telephone: 317/639-5454
Facsimile:  317/632-1319
pkovacs@silegal.com
lcross@silegal.com